Moncure, P.,
delivered the opinion of the court, sustaining the decree of the court below overruling tbe exceptions, and decreeing upon the report. Upon the appeal by John Burton, the opinion proceeded as follows;
Having considered and disposed of all the questions directly arising on this appeal, we would now be prepared to say there is no error in the decree appealed from, and that it ought to be affirmed, but for the fact that there is another appeal in this case, which was heard at the same time with this appeal, and the decision of which may affect the decision of this appeal. We will, therefore, proceed now to consider that appeal.
That appeal was taken by John Burton, to the decree of the 28th of March 1848, and also to the decree of the 13th of March 1869. The decree of the 28th of March 1848, was as to the construction of the will of Robert Burton, the younger, and as to the disposition of his estate to be made by his executor. The court was of opinion, that the true intent and meaning of the testator, *8 apparent on the face of the will, was to devise to his mother, Anna Pitfield Brown, wife of James Brown, to her sole and separate use, all his estate, real and personal, with power at her death, or before that period should arrive, to dispose of the same, by will or otherwise, as to her might seem most proper ; and was further of opinion, that the said Anna Pitfield Brown, by her will or appointment, duly made and published on the 31st day of March 1840, during the lifetime of her husband, duly exercised the power so vested in her; and the court accordingly decreed that James E. Heath, executor of said Robert Bui’ton the younger, should sell certain stocks, &c., and regarding, &c., and after reserving, &c., should divide the whole fund in hand equally among the eight children of the said Anna P. Brown, (to whom she had appointed the estate claimed to have been devised to her by her said son Robert Burton), the eighth part or share of John Burton to be paid to himself or his counsel, without exacting a refunding bond, &c. There was accordingly a distribution made by the said executor in pursuance of the said decree, and the portion of John Burton was paid to his attorney, as appears by a report of Commissioner Poiteaux, returned and filed on the 30th of June 1848.
In John Burton’s petition for an appeal, four errors are assigned in the decrees appealed from. The first is, that “ in respect of the transactions of James Brown, as executor of Robert Burton the elder, the Circuit court erred in not adjudging to be due from said Brown at least as much as is claimed by the first of the exceptions filed by John Burton on the 8th of March 1869.” This assignment of error has already been disposed of.
The second is, that “ the Circuit court should have held, under the will of Robert Burton the younger, that all his estate, other than what was given for life to the mother of him and of your petitioner, was, after her decease, to pass to your petitioner in absolute property. It *9 may be difficult, perhaps impossible now, to make, in any practical way, a correction of the error committed by the decree of the 28th of March 1848, as to the fund then in the hands of James E. Heath, in giving to your petitioner only one-eighth thereof. But your petitioner is advised that the commission of that error furnishes no sufficient reason for sanctioning the error committed by the decree of the 13th of March 1869, as to the large amount with which James Brown is chargeable in respect of estate bequeathed by Robert Burton the elder, to Robert Burton the younger. He is advised, that from the materials now in the record, there may be a statement showing the amount to^which he is entitled, and upon such statement, a decree in his favor for said amount.”
This is the main assignment of error on this appeal, and was the cause of it. The question involved is, as to the i true and proper construction of the will of Robert Burton the younger, who died in 1837. This question was very distinctly presented for the decision of the court, in the original bill filed in this case in February 1843 ; in which it was stated, that “ as a judicial construction of the said will, for guidance and safety of your orators, is among the objects of this bill, 'your orators will, for the convenience of the court, here copy it in extenso,” &c. ; and then the substantial parts of the will are set out, in luec verba, in the bill. An official copy of the will was also filed as an exhibit with the bill. In the answer of John Burton, filed_ on the 27th of June 1845, he distinctly concurred in presenting the same question for the -decision of the court, using in his answer this language : “ This defendant concurs in desiring the court to declare the true construction of the will of Robert Burton the younger ; and he prays that the executorial accounts of the said Heath, on the estate of Robert Burton the younger, may be stated, settled and adjusted, and that a decree may be made for the distribution of the assets in the bauds of the said executor, according to the several *10 rights of the parties entitled thereto.” On the 28th of March 1848, this question, thus distinctly propounded to-the court, both by the bill and the answer of John Burton, was decided separately from all other questions in the cause ; it being recited in the decree that “ this cause came on this day to be again heard on such only of the papers and pleadings formerly read as involve the judicial construction of the will of Robert Burton the younger, deceased, and the apportionment of his estate among those entitled to it under said will, and also on the report made by Commissioner Poiteaux, dated the 8th day of June 1846, under that part of the interlocutory decree entered herein on the 27th of'June 1845, which directed James E, Heath, executor of the said Robert Burton the younger, to render before the said commissioner an account of his transactions as executor.” And the decree was then rendered/which has already been substantially set forth. The question appears to have been argued before the court with great ability by counsel on both sides ; and at the time of pronouncing the decree an able opinion was delivered by the court, which is referred to in the decree, and made a part of the record. The question was certainly a very doubtful one, upon which counsel and judges might very well differ. Being a question of construction of a will, it depended, almost entirely, upon the terms of the will, and the circumstances which surrounded the testator at the time of its execution. It seems from the record, that John Burton acquiesced in the decree, took no exception to any proceeding had under it, or in conformity with it, made no application for a re-hearing of the question, or for an appeal from the decree, from the date thereof, on the 28th of March 1848, until the petition for this appeal was prepared and presented to a judge of this court, on or about the 10th of February 1870, a period of nearly twenty-two years. V ery soon after the said decree was rendered, James E. Heath, executor of Robert Burton the younger, in pur *11 suance thereof, made distribution of a fund in his hands as such executor, among the eight children of the said Anna P. Brown; paying the eighth part or share of John Burton, amounting to $511.25, to his counsel, as appears by a report of Commissioner Poiteaux, returned and filed in the case on the 30th day of June 1848. In Commissioner Giles’ first general report, dated September 18th, 1855, he stated the accounts made out by him, upon the assumption that the estate of Robert Burton the younger was distributable according to the construction put upon his will by the decree of the Circuit court as aforesaid ; and there was no exception to his report on that ground. On the 1st of March, 1859, the cause came on to be further heard on the papers formerly read, and the said report of Commissioner Giles, and the exceptions thereto, &c., when a decree was rendered disposing of some of the exceptions, but as to the rest recommitting the report to the commissioner, with instructions. As before stated, there was ah appeal from this decree, which was affirmed by the court of Appeals on the 30th of April 1864. In Commissioner Giles’s next general report, dated August 22, 1868, made in pursuance of the said decree of the 1st of March 1859, affirmed on the 30th of April 1864, as aforesaid, he stated his accounts in the same way, in regard to the distribution of Robert Burton the younger’s estate, in which they had been stated in his former report as aforesaid; and there was no exception to his latter, as there had been none to his former, report on that ground. On the contrary, in the special statements annexed to the special report made by the commissioner at the request of John Burton’s counsel, dated September 14th, 1868, and according to which the said counsel claimed that a decree should be rendered, the accounts were stated in the same way in regard to the distribution of the said estate. On the 13th of March 1869, the cause came on to be further heard on the papers formerly read, and the said report of Commissioner *12 Giles, dated the 22d of August, 1868, and the exceptions thereto, &c., when the court overruled all of the said exceptions, approved and confirmed the said report, and rendered a decree accordingly. From that decree the executors of James Brown applied for and obtained an appeal on or about the 23d of June 1869 ; after which, to wit: on or about the 10th of February 1870, the defendant, John Burton, applied for the appeal obtained by him as aforesaid.
How whether the question in regard to the true construction of the will of Robert Burton the younger, was correctly decided or not by the Circuit court, in the said decree of the 28th of March 1848, (upon which question we express no opinion), we think it is now too late, and was too late when the appeal was applied for by John Burton as aforesaid, to object, for the first time, to the correctness of that decision. We think his right to make such an objection has been lost by acquiescence, express or implied, by lapse of time, and (if not lost before) by his failure to make the objection in this court when the appeal from the decree of the 1st of March 1859 was heard in 1864. The issue upon this question was, as we have seen, very distinctly presented by the pleadings in the cause; the parties seem to have desired to have it speedily decided, and it was accordingly the first litigated question which was decided in the case. It was separate from the other numerous questions involved in the case, although in the consequences of its decision it waB connected with most of them. We find, therefore, that on the 28th of March 1848, without waiting for the maturity of the cause for a full and general hearing, it was brought on for hearing as to this question only, and upon such of the papers and pleadings only as had relation to it, and, after full and able argument, an opinion and decree were pronounced by the court upon the question. If John Burton had not intended to acquiesce in that decision, he would at once have appealed from it. *13 He had the strongest motive for doing so, and no motive whatever for delay. His interest .and desire were for a speedy termination of the case, so far as he was concerned. An appeal from that decision would not have delayed the case in other respects, at least if it could not be brought to a conclusion in other respects before the termination of the appeal. That course was pursued by James Scott, executor of John Lesslie, in regard to a decree rendered against him in the case on the 23d day of March 1849. On that day, the cause came on for hearing only as to the question which affected Lesslie’s executor, and upon such only of the papers and pleadings as involved that question, when the court rendered the said decree against him. Being dissatisfied with it, he at once appealed from it; and in February 1855, the special court of Appeals reversed it, John Burton would doubtless have pursued the same course if he had not determined to acquiesce in the decree. There was the same reason for appealing from it at once, as there would have been if the question decided had been the only question involved in the case.
John Burton not only acquiesced in the decision by failing to appeal from it, but he also acquiesced in it, as we have seen, by receiving money under it. He received his distributive portion of the money which was distributed in pursuance of the decree, by James E. Heath, executor of Robert Burton, the younger. In other words, he received a portion of the estate of Robert Burton the younger, under the will of his mother, Anna P. Brown; and he now claims the whole of that estate against the said will. This is claiming under and against the same will, which in law is inadmissible. "When, therefore, he claimed and received money under the will, he concluded himself from afterwards claiming against it. As a géneral rule, a decree or order made by consent of counsel, cannot be the subject of appeal. 3 Daniel’s Ch. Pl. and Pr. 1602, 1st Am. Ed. ; Atkinson v. Marks, *14 1 Cow. R., 691, 709. In that case it was held that there could be no appeal from a decree, not only when it - was by consent, but also if contested and the party acted under it; as where there is a decree for an account, settling principles and instructing the master accordingly, and the party, though he considers it erroneous, pursues the reference instead of taking an appeal at once. The latter branch of the rule, however, as laid down in the case in 1 Cowen, appears not to be the English rule, Morgan v. Morgan, 7 Eng. Law and Eq., 216, 220, as it certainly is not the rule in this State. In this case, as we have seen, John Burton not only pursued the reference, but accepted money under the decree, did not except to any of the reports of the commissioner made in pursuance of the decree, claimed a decree according to special statements made out by his counsel, upon the principles settled by the decree of the 28th of March 1848, and made no objection in any way to that decree for 22 years after it was rendered, or until his appeal was applied for on the 10th of February 1870 ; and that too, when the cause came on for general and final hearing, and there was a decree therein on the 1st of March 1859, from which decree there was an appeal by the executors and devisees of James Brown and of Anna P. Brown, and others, on which appeal the said decree was affirmed by this court on the 26th of April 1864.
If John Burton wished to object to the correctness of the decree of the 28th of March 1848, and had not previously given up for lost his right to do so by his acquiescence as aforesaid, he ought to have made such objection, as he might have done, in the Circuit court, when the cause was there heard on the 1st of March 1859 ; or, at all events, in this court, when the appeal was here heard on the 26th of April 1864. That appeal was taken in 1859. John Burton was a party to it as one of the appellees. He was represented by able counsel, who were present in this court when the appeal came on *15 io be heal’d, and argued the case in behalf of their •clients. Hot having made the objection on either of those two occasions, his failure to do so would, of itself, have precluded him from the right of appealing after-wards from the decree of the 28th of March 1848, if his previous conduct or neglect had not already precluded him from such right.
Whatever may be the rule of equity practice in England, New York, or elsewhere, we think that, according to our law and practice, the decree of this court of the 26th of April 1864 operated as an affirmance of all the-prior decrees rendered in the cause which had not been previously reversed, including the decree of the 28th of March 1848, even supposing that decree not to have become irreversible by acquiescence as aforesaid.
What was said by the Lord Chancellor (Lord St. Leonards) and Lord Brougham, in the case of Birch v. Joy, referred to by the counsel of John Burton, 3 House of Lords cases, 578, to the effect that the part of a decree unappealed from remains as before, and is not rendered final by the decision of the appellate court on the part which is the subject of the appeal, is therefore, not true and not applicable, at least as a general rule, in this State—“As in the case of an appeal from a final decree, not only any error in that, but any error in the former proceedings, ought to be corrected, so upon an appeal from an interlocutory order, not only error in that order, but errors in the former proceedings should be corrected. In either case, the effect of the appeal is to bring up the whole proceedings prior to the decree or order from which the appeal is taken.” Thus the principle is laid down in 2 Rob. Pr.. old ed , p. 433; and in support of it, the following cases are cited: Lomax v. Picot, 2 Rand., 247; Jacques, &c., v. Methodist Episcopal Church, 17 John R., 548; Aikinson v. Marks, 1 Cow. R., 691; Teal v. Woodworth, 3 Page, R. 470. This principle prevails in this State. Huston’s adm’r v. Cantril, *16 &c., 11 Leigh, 136. In that case, Judge Stanard, in considering two questions, the first of which was, “ Can ' the court, on this appeal from the dismission of the supplemental bill, examine the previous decrees, and correct them, if they be erroneous,” said : “The cases referred, to in 2 Rob. Pr., 433, leave no doubt that the first question must be answered in the affirmative.”
There is another rule of equity practice in this State,, which authorizes the appellate court to correct, not only all errors in the proceedings of the court below against the appellant, but also all errors in those proceedings against the appellee. That rule is thus laid down in 2 Rob. Pr., p. 434; “The whole proceedings prior to-the decree'or order being brought up, if error against’ the appellee is perceived in the record, the appellate-court will reverse the proceedings, either in whole or in. part, in like manner as it would have done if the appellee had brought the same before it by appeal; ” and in support of the rule, the author cites Day v. Murdoch,. 1 Munf., 460. In that case it was held by this court, in. October 1810, that upon an appeal from a decree in chancery, an error to the injury of the appellee ought to be corrected, although he did not appeal. This seems to be the first express reported judicial sanction which was given to the rule; but it has been acted upon ever since; and the same author cites a case from the next volume of Munford’s reports, in which it was acted upon, viz: Defarges v. Lipscomb, 2 Munf., 451. Indeed,, as early as the 2d of October 1811, this court established the following general rule: “ It is the opinion of this-court, founded as well on a full consideration of the law as on various decisions which have heretofore been had,, that in future, where a judgment or decree is reversed, neither in the whole nor in part, on the ground of error against the appellant or plaintiff, in .any appeal, writ of error or supersedeas; yet if error is perceived against the appellee or defendant, the court will consider the- *17 whole record as before them, and will reverse the proceedings, either in whole or in part, in the same manner as they would do were the appellee or defendant also to bring the same before them, either by appeal, writ of error or supersedeas; unless such error be waived by the appellee or defendant, which waiver shall be considered a release of all errors as to him.” This rule, in substance, or one like it, has been in force ever since, and the existing rule on the subject is the 9th of the rules of the court, as published in the 20th volume of Grattan’s Reports. This court recently had occasion, in an opinion delivered by Judge Christian, in the case of Walker’s ex’or, &c., v. Page, &c., 21 Gratt., 636, to •express its views in regard to the subject of this rule, which opinion embraces all that is necessary to be said upon the subject.
Then, whether John Burton had a right or not to ask for a correction of the error in the decree of the 28th of March 1848, of which he now complains, when the case was before the appellate court, on the appeal of Lesslie’s ex’or from the decree of the 23d of March 1849, or on the appeal of Alexander S. Brown and others from the decree of the 19th of November 1853, appointing a receiver (those appeals being- from special decrees upon particular questions arising in the case), upon which question we deem it unnecessary now to express an opinion ; there can be no doubt, but that he could have asked for such correction, when the case was before this court on the appeal from the decree of the 1st of March 1859, unless he had previously abandoned his right to do so, or lost or given it up by acquiescence as aforesaid. And unless he had so abandoned, lost or given up such right, or intended to waive it, he ought to have exercised it on that occasion ; and his failure to do so was equivalent to a waiver of such right, and a release of all error as to him. Having then an opportunity to exercise the right when the whole ease was already before the appellate court, *18 there can he no reason in permitting him to forego that opportunity, and afterwards to take a new and independent appeal, for the purpose of obtaining the same relief he might have obtained on the former appeal. To permit him to do so would not be a benefit to him, but rather an injury, while it would subject his adversaries-to unnecessary expense and inconvenience. There is wisdom therefore in our rule of practice, which authorises the appellate court to correct errors against the appellee as well as against the appellant, and in that construction of the rule which requires the appellee to invoke the exercise of such authority, unless he means to waive all. error as to him.
"We are therefore of opinion that the appellant, John Burton, had no right to obtain this appeal upon the-ground relied on in the second assignment, of error, that “the Circuit court should have held under the will of Robert Burton the younger, that all his estate other than what was given for life to the mother of him and your petitioner was, after her decease, to pass to your petitioner in absolute property.”
In regard to the third assignment of error, it has already been disposed of in deciding the other appeal. In regard to the fourth and last, it does notarise, under the view we have taken of the case. As to the suggestion made in the latter part of that assignment of error, that there should be a “provision in respect to descendants of James Brown who shall have received money arising from the proceeds of lands embraced in the deed of October 28, 1824, to George Clark and others;” that “under the distribution in Virginia of the estate of Robert Burton the elder, no portion should be paid to any of those descendants until there shall first be deducted what shall have been paid to them respectively in Kentucky;” that is a subject of which the court below will have control when the cause goes back to it, and which properly belongs to that court. Out of abundant *19 caution, if desired, the affirmance' may be without prejudice to the right of the said court to make such decree in that respect as may seem to it to be proper.
Upon the whole, we are of opinion, that in the case of Brown's ex'ors, &c. v. Burton's ad'mr, &c., there is no error in the decree appealed from, and that it be affirmed, without prejudice as aforesaid, and that in the other case, that of Burton v. Brown, &c., the appeal be dismissed as having been improvidently allowed.
The decree was as follows :
The court is of opinion, for reasons stated in writing, and filed with the record, that the second of the above named appeals was improvidently allowed from the said decree of the 28th of March 1848, and therefore it is decreed and ordered that the same be dismissed; and that the appellant pay to the appellees in that appeal, their costs by them about their defence in that behalf expended. And the court, for reasons stated and filed as aforesaid, is further of opinion, that there is no error in the said decree of the 13th of March 1869, and that the same ought to be affirmed. But it being suggested to the court that the descendants of James Brown, or some of them, may have received money arising from the proceeds of sales of land in Kentucky embraced in the deed of 28th of October 1824, to George Clarke and others, in the proceedings mentioned; and that, in that event, no portion of the proceeds of the trust estate in Virginia, embraced in the deed of the same date to Charles Copland and others, also in the proceedings mentioned, should be paid to any such descendants as may have so received money as aforesaid, until they shall have duly accounted for the money so received, in order that there may be a just and equitable apportionment of all the trust fund which may be realised under either of the said deeds among the parties entitled to the benefit thereof, according to their respective rights; the court *20 1 is of opinion that the court below may make any orders and decrees which may seem to it proper in that respect, but that out of abundant caution the said affirmance should be expressed to be without prejudice to the right of that court to make such orders and decrees. Therefore, it is further decreed and ordered that the said decree of the 13th of March 1869, be affirmed, without prejudice as aforesaid, and that the appellants in the first of the above named appeals, do, out of the estate of their testator, James Brown, deceased, pay to the appellees in that appeal, their costs by them about their defence in that behalf expended. Which is ordered to be certified to the Chancery court of the city of Richmond.
Appeal of John Burton dismissed.
The Decree arrirmed.